J-E01006-21

2021 PA Super 213

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSE JAVIER DEJESUS | : | |
| | : | |
| Appellant | : | No. 883 EDA 2018 |

Appeal from the Judgment of Sentence January 5, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001277-1997

BEFORE: PANELLA, P.J., BENDER, P.J.E., LAZARUS, J., STABILE, J.,
DUBOW, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., and KING,
J.

OPINION BY DUBOW, J.: **FILED OCTOBER 20, 2021**

Appellant, Jose Javier DeJesus, appeals from the Judgment of Sentence entered on January 5, 2018, resentencing him to life without the possibility of parole ("LWOP") for a Second-Degree Murder he committed as a juvenile. Relying on **Miller v. Alabama**, 567 U.S. 460 (2012), and **Montgomery v. Louisiana**, 577 U.S. 190 (2016), he challenges the constitutionality of his LWOP sentence and the discretionary aspects of his sentence. In light of the U.S. Supreme Court's recent decision in **Jones v. Mississippi**, 141 S.Ct. 1307 (2021), we conclude that Appellant's LWOP sentence is constitutional. Further, because Appellant did not invoke our jurisdiction to review the discretionary aspects of his sentence, he has waived his challenge to the sentencing court's consideration of mitigating factors. We, thus, affirm.

On May 10, 1994, Appellant shot Raymond McKinley in the neck during an armed robbery. The gunshot completely paralyzed Raymond and as a result of the shooting, he died in January 1997. A jury convicted Appellant in December 1997 of Second-Degree Murder, Robbery, and firearms offenses. The court sentenced him to, *inter alia*, the statutorily mandated sentence of LWOP for Second-Degree Murder. This Court affirmed his Judgment of Sentence and Appellant did not seek further review. **Commonwealth v. DeJesus**, 737 A.2d 1271 (Pa. Super. filed March 22, 1999) (unpublished memorandum).

On February 25, 2016, Appellant filed a *pro se* petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, seeking resentencing pursuant to **Miller** and **Montgomery**. The PCRA court granted Appellant relief on June 5, 2017, vacated Appellant's sentences, and ordered resentencing.

On July 18, 2017, the Commonwealth filed a Notice of Intent to Seek Imposition of a Life Sentence. The sentencing court held a resentencing hearing on December 5 and 6, 2017, at which the parties presented the testimony of multiple lay and expert witnesses. Relevant to this appeal, the parties presented respective experts in psychology to opine on, *inter alia*, Appellant's mental health and the possibility of rehabilitation.

On January 5, 2018, the sentencing court resentenced Appellant to LWOP. Appellant filed a Post-Sentence Motion, which the court denied on February 16, 2018.

Appellant timely filed a Notice of Appeal, and both he and the trial court complied with Pa.R.A.P. 1925. A panel of this Court issued an initial decision in this Appeal, which we withdrew after granting Appellant's Petition for *En Banc* Review.

Appellant presents the following issues for our review:

1. Whether [LWOP] is illegal because the [Commonwealth] did not present sufficient evidence to prove beyond a reasonable doubt that [Appellant] is incapable of rehabilitation, where both prosecution and defense experts agreed his rehabilitation is in fact possible?

2. Whether [LWOP] violates protections against cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution, as well as Article I, Section 13 of the Pennsylvania Constitution, when imposed upon a juvenile offender – like [Appellant] – whose conviction of [S]econd-[D]egree [M]urder does not reflect a specific intent to kill?

Appellant's Br. at 5.

**Standard of Review**

Our standard of review is dependent on whether Appellant challenges the legality of his sentence or the discretionary aspects of that sentence. To make that determination, we must briefly review the jurisprudence developed over the past decade pertaining to the constitutionality of the imposition of a LWOP sentence on a juvenile homicide offender.

Until 2012, Pennsylvania law mandated that a sentencing court sentence a juvenile offender convicted of first or second-degree murder to LWOP. In *Miller*, 567 U.S. at 479, the U.S. Supreme Court found that such sentencing schemes, which mandated a LWOP sentence for a juvenile homicide offender

and did not provide the sentencer with any discretion in deciding whether to impose a LWOP sentence, violated the constitutional protections in the Eighth Amendment because the sentencing scheme did not consider the juvenile homicide offender's possibility of diminished culpability and greater potential for rehabilitation. For a sentence to meet the requirements of the Eighth Amendment, and thus be a legal sentence, the U.S. Supreme Court held that the sentence must be part of a sentencing scheme that provides "a judge or jury [] the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489. In particular, the sentencer must have the discretion to consider the juvenile homicide offender's "youth and attendant characteristics" before deciding whether to impose a LWOP sentence. *Id.* at 483.

In 2016, the U.S. Supreme Court in *Montgomery*, 577 U.S. at 206-09, applied the factors in *Teague v. Lane,* 489 U.S. 288 (1989), and concluded that *Miller's* holding that statutorily mandated LWOP sentences on juvenile homicide offenders violated the protections in the Eighth Amendment was a substantive rule of constitutional law that the sentencing court must apply retroactively. In other words, juvenile homicide offenders who were serving statutorily mandated LWOP sentence were serving illegal sentences because the sentencer had no discretion in deciding whether to impose a LWOP sentence. Consequently, the state collateral review courts must apply the *Miller* holding retroactively and address the illegality of LWOP sentences in collateral proceedings. *Id.* The *Montgomery* Court directed that a sentencing

- 4 -

court exercise its discretion before imposing a LWOP sentence and hold a "hearing where youth and its attendant characteristics are considered as sentencing factors." *Id.* at 210.

In response to *Miller and Montgomery*, the Pennsylvania Supreme Court in *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) ("*Batts II*"); *abrogated by Jones*, 141 S.Ct. 1307, set forth the sentencing scheme and factors that the sentencing court must consider to meet the requirements of the Eighth Amendment and, thus, impose a legal LWOP sentence on a juvenile homicide offender. In particular, our Supreme Court held that the Eighth Amendment only authorizes a sentencing court to impose a sentence of LWOP when the sentencing court determines that the juvenile offender is one of the "rare" and "uncommon" children who is "permanently incorrigible." *Batts II*, 163 A.3d at 435. Thus, in order for a sentencing court to have the legal authority to impose a LWOP sentence, the sentencing court must find by competent evidence that the juvenile offender "will forever be incorrigible, without any hope for rehabilitation." *Id.*

As a result of this analysis, appellate review of the constitutionality of a LWOP sentence and, thus the legality of the sentence, involved the question of whether the sentencing court relied on competent evidence to conclude that the juvenile homicide offender "will forever be incorrigible, without any hope for rehabilitation." *Id.*

The U.S. Supreme Court, however, in *Jones*, 141 S.Ct. 1307, abrogated the holding in *Batts II.* The U.S. Supreme Court again addressed the

requirements that the Eighth Amendment imposes on a sentencing scheme for the sentencer to impose a legal LWOP sentence on a juvenile homicide offender. The U.S. Supreme Court first reiterated the principle that a LWOP sentence for a juvenile homicide offender meets the requirements of the Eighth Amendment so long as the sentence is part of a sentencing scheme in which the sentencer has the discretion to impose a sentence less than LWOP. *Id.* at 1311. In addition, the sentencing scheme only requires the sentencer to consider the juvenile homicide offender's "youth and attendant characteristics" to meet the requirements of the Eighth Amendment. *Id.* at 1314 (quoting *Miller*, 567 U.S. at 483). The Eighth Amendment does not, however, require a sentencer to make a separate factual finding of "permanent incorrigibility." *Id.* at 1318-19. The U.S. Supreme Court also rejected the need for the sentencer to make "an on-the-record sentencing explanation with an implicit finding of permanent incorrigibility" to be legal under the Eighth Amendment. *Id.* at 1319.

The U.S. Supreme Court also noted that its holding "does not preclude the States from imposing additional sentencing limits in cases involving defendants under 18 convicted of murder." *Id* at 1323. For example, States may still require sentencers to make extra factual findings and explain formally on the record the reasons for imposing LWOP. *Id.* However, "the U.S. Constitution, as this Court's precedents have interpreted it, does not demand those particular policy approaches." *Id.* In other words, these other sentencing requirements do not carry the protections of the Eighth

- 6 -

Amendment and thus, the sentencing court's treatment of those requirements do not impact the trial court's constitutional authority to impose a LWOP sentence on a juvenile homicide offender. Rather, these additional requirements affect only the discretionary aspects of the imposition of the LWOP sentence.

In **Batts II**, our Supreme Court interpreted the Eighth Amendment as imposing on a sentencing court that imposes a LWOP sentence the requirement that the sentencing court make a finding, supported by competent evidence, of "permanent incorrigibility," a standard much higher than the requirement that the sentencing court consider a "juvenile's youth and attendant characteristics." Since "[i]t is beyond cavil that [Pennsylvania state courts are] bound by the determinations of the United States Supreme Court on issues of federal law, including the construction and interpretation of the federal constitution[,]" **Hall v. Pa. Bd. of Probation and Parole**, 851 A.2d 859, 863 (Pa. 2004), we must analyze this appeal based on **Jones**. In other words, when reviewing the legality of a sentencing court's imposition of a LWOP sentence, we may only focus on the **Jones** factors and not those espoused in **Batts II.** We consider the **Batts II** factors as part of the discretionary aspects of the LWOP sentence.

As a result, when reviewing the legality of the imposition of a LWOP sentence, the appellate court only reviews whether the sentencer considered the juvenile homicide offender's "youth and attendant characteristics." The appellate review of any other factors, such as whether a juvenile homicide

offender is "permanently incorrigible," involves the review of the discretionary aspects of the sentence.

**Appellant's Challenges to the LWOP Sentence**

With this background in mind, we turn to Appellant's challenge to his LWOP sentence. Although he frames his challenge as a legality of sentence issue, the crux of it is that the sentencing court improperly weighed certain expert testimony regarding Appellant's mental health and erroneously concluded that Appellant was incapable of rehabilitation. Appellant's Br. at 23-27. In light of **Jones** and the fact that Appellant does not argue that the sentencing court failed to consider Appellant's "youth and attendant characteristics," we are constrained to characterize Appellant's challenge as one to the discretionary aspects of his sentence, not its legality.[1]

Challenges to the discretionary aspects of sentence are not appealable as of right. **Commonwealth v. Leatherby**, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must

_____

[1] In **Commonwealth v. McGrath**, 255 A.3d 581 (Pa. Super. 2021), this Court found that a sentence of 48 years was not a *de facto* LWOP sentence and the trial court did not err in failing to consider the **Miller** factors. In its conclusion, our Court stated, after citing to **Jones** in a footnote, "[a]s such, we need not consider whether the trial court errantly omitted a finding of permanent incorrigibility." **Id.** at 587. We, however, overrule **McGrath** to the extent that it stands for the proposition that a sentencing court's determination of "permanent incorrigibility" impacts the legality of the sentence. We likewise overrule **Commonwealth v. Lebo**, No. 1538 MDA 2020, 2021 WL 3743804 (Pa. Super. filed Aug. 24, 2021) (non-precedential opinion) to the extent that it stands for the proposition that a sentencing court's consideration of the **Batts II** factors impacts the legality of the juvenile defendant's LWOP sentence.

invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. *Id.* An appellant must satisfy all four requirements. *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013).

Appellant met the first two requirements by filing a Post-Sentence Motion and timely filing a notice of appeal. He has not, however, met the last two requirements by including a Rule 2119(f) Statement in his brief and explaining the manner in which his sentence is inappropriate under the Sentencing Code or sentencing norms. The Commonwealth objects to Appellant's failure to include a Rule 2119(f) Statement. Commonwealth's Br. at 32. Consequently, Appellant has failed to invoke our jurisdiction to review the discretionary aspects of his sentence and unfortunately, we lack the authority to review the merits of Appellant's challenge to the LWOP sentence.

In his second issue, Appellant argues that the imposition of a LWOP sentence on a juvenile homicide offender who is convicted of Second Degree murder is unconstitutional under the Eighth Amendment because the conviction does not require a finding that the juvenile had the specific intent

to kill the decedent. Appellant's Br. at 11-23. As discussed above, the Supreme Court in *Jones* does not interpret the Eighth Amendment as differentiating between First- and Second-Degree murder. Rather, the *Jones* court interprets the Eighth Amendment as only requiring the sentencing scheme to not mandate the imposition of a LWOP sentence and the sentencer to consider a juvenile homicide offender's "youth and attendant characteristics."

Appellant also purports to challenge the constitutionality of his LWOP sentence under Article I, Section 13 of the Pennsylvania Constitution. Appellant, however, does not cite any case law or develop any argument regarding the applicability of the Pennsylvania Constitution. "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). Since Appellant did not develop this argument, it is waived and we are unable to review it.

Appellant has also waived his argument that the LWOP sentence violates Equal Protection Clause of the Fourteenth Amendment because the legislature amended the Sentencing Code so that it differentiates between juveniles homicide offenders who committed homicides before 2012 and after 2012. Appellant failed to raise this challenge before the trial court and thus, waived it. Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). *See Commonwealth v. Lawrence*,

99 A.3d 116, 122 (Pa. Super. 2014) (finding waiver where appellant failed to raise Equal Protection argument in lower court).

For these reasons, we affirm the decision of the sentencing court.

Judgment of Sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 10/20/2021*